**STATE of Iowa, Appellee,**

v.

**Craig Allen KINKEAD, Appellant.**

No. 96–1892.

Supreme Court of Iowa.

Oct. 22, 1997.

Linda Del Gallo, State Appellate Defender, and Tricia A. Johnston, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor and Susan M. Crawford, Assistant Attorneys General, and Connie S. Ricklefs, County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

SNELL, Justice.

Following a stipulated trial, defendant Craig Allen Kinkead was convicted of possession of a controlled substance (crack cocaine), manufacturing a controlled substance (marijuana), and operating a vehicle without a valid motor vehicle license, in violation of Iowa Code sections 124.401(3), 124.401(1)(d) and 321.218(1) (1995), respectively. On appeal, he argues the district court erred in denying his motion to suppress evidence ob-

tained at the time of his arrest and that the statute upon which the stop was initiated is unconstitutionally vague. The defendant has also raised the issue of ineffective assistance of counsel in the event we find the vagueness issue was not properly preserved.

## I. Factual and Procedural Background

In the late evening hours of May 8, 1996, Iowa State Trooper Mary Miller was on routine patrol on a state highway near Anamosa. Miller was parked on the shoulder of the highway with her windows up and police radio on. A black Ford pickup drove by and Miller's attention was drawn to the muffler on the vehicle, which she believed to be excessively loud. She decided to stop the vehicle to investigate and issue a citation based on Iowa Code section 321.436, which prohibits excessive muffler noise. Once the vehicle was stopped, Miller approached and asked the driver, Craig Kinkead, to produce his driver's license. When Kinkead was unable to produce his license, Miller asked the dispatcher to run a check on his license status. The check disclosed that Kinkead's license was suspended and that an outstanding warrant existed for his arrest. Miller called for assistance from Anamosa police and with their help, arrested Kinkead and conducted an inventory search of Kinkead's vehicle prior to towing.

During the search, Anamosa police officer Andy Bowers discovered two small plastic bags containing a cream-colored, rock-like substance inside an empty cassette case in the console of the vehicle. Field tests conducted by the officers indicated that the substance was crack cocaine. Anamosa officer Jeff Frankfurt discovered six plants on the passenger-side floorboard of the vehicle which field tests indicated to be marijuana. The officers seized the items as evidence and subsequent tests performed by the state crime laboratory confirmed their status as controlled substances.

The State subsequently charged Kinkead by trial information with the following offenses: possession with intent to deliver a controlled substance, manufacturing a controlled substance, and operating a motor vehicle without a valid license. The State later agreed to reduce the possession with intent to deliver charge to the lesser-included offense of possession of a controlled substance. Kinkead filed a motion to suppress all evidence obtained by the search of the vehicle, arguing that Miller did not have the requisite reasonable suspicion to warrant the stop of his vehicle and, therefore, that the subsequent search was illegal under the Iowa and United States Constitutions.

In ruling on the suppression motion, the district court found that Miller had reasonable suspicion to believe the condition of Kinkead's vehicle violated Iowa Code section 321.436, which prohibits excessive muffler noise. Despite the fact that a later inspection of the vehicle revealed that the muffler was in good working condition and did not violate the statute, the court found that Miller's suspicion was reasonable at the time in light of the articulated reasons for her belief that the vehicle violated the statute. The district court therefore denied the defendant's motion to suppress.

The district court found Kinkead guilty on all three counts and sentenced him to an indeterminate term of imprisonment not to exceed five years on the manufacturing conviction, and 160 days each for the charges of possession and operating without a valid driver's license. Kinkead appeals, claiming the district court erred in overruling his motion to suppress evidence obtained in the search of his vehicle and that the statute which formed the basis for the stop of his vehicle is unconstitutionally vague.

## II. Scope of Review

■ Kinkead's argument as to the propriety of the search involves a constitutional right. Therefore, we must make "an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Cook,* 530 N.W.2d 728, 731 (Iowa 1995). In conducting our de novo review of the district court's denial of the motion to suppress, we may consider evidence presented at the suppression hearing as well as evidence presented at trial. *Id.* Our review of the ineffective assistance of counsel claim is also de novo. *State v. Ray,* 516 N.W.2d 863, 865 (Iowa 1994).

III. Fourth Amendment Claim

A. Background Legal Principles

■ The Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures by government officials. As a general matter, to be reasonable, a search or seizure must be conducted pursuant to a warrant issued by a judge or magistrate. Searches conducted without a warrant are per se unreasonable unless an exception to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Cook*, 530 N.W.2d at 731.

One of the well-established exceptions to the warrant requirement is that formulated in *Terry v. Ohio*, which allows an officer to stop an individual or vehicle for investigatory purposes based on a reasonable suspicion, supported by specific and articulable facts, that a criminal act has occurred or is occurring. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). We have consistently upheld searches based on this exception to the warrant requirement. *See, e.g., State v. Haviland*, 532 N.W.2d 767, 768 (Iowa 1995); *State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993); *State v. Mitchell*, 498 N.W.2d 691, 693 (Iowa 1993).

■ In determining whether an investigatory stop of a vehicle complies with the protections provided by the Fourth Amendment, we must consider whether the facts articulated by the officer support the intrusion on the individual's privacy and "whether the scope of the intrusion is reasonably related to the circumstances which justified the intrusion." *Mitchell*, 498 N.W.2d at 693 (citing *State v. Cooley*, 229 N.W.2d 755, 760 (Iowa 1975)). The existence of a reasonable suspicion is based on an objective standard: whether the facts available to the officer at the time of the stop would lead a reasonable person to believe that the action taken by the officer was appropriate. *Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *Mitchell*, 498 N.W.2d at 693. An unparticularized suspicion or hunch is not enough to establish reasonable suspicion. *Haviland*,

532 N.W.2d at 768. However, "an officer may make an investigatory stop with 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Richardson*, 501 N.W.2d at 496–97 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989)).

In order to establish reasonable suspicion, the State bears the burden of showing that the officer had "'specific and articulable cause to support a reasonable belief that criminal activity may have occurred.'" *State v. Wiese*, 525 N.W.2d 412, 414 (Iowa 1994) (quoting *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980)). If the State fails to carry its burden, the evidence obtained through the investigatory stop must be suppressed. *Id.* (citing *Aschenbrenner*, 289 N.W.2d at 619).

B. Legality of Stop

■ In the instant case, Kinkead argues that the stop of his vehicle was illegal because Trooper Miller lacked reasonable suspicion and any suspicion she did have was merely subjective and cannot withstand an objective review. We find that Miller offered specific and articulable facts to support her belief that the muffler on Kinkead's vehicle violated Iowa Code section 321.436. That section provides: "Every motor vehicle shall at all times be equipped with a muffler in good working order and in constant operation to prevent excessive or unusual noise...." Iowa Code § 321.436. Miller testified that she heard Kinkead's muffler clearly despite the fact that her windows were up and her police radio was on. That auditory perception gave Miller reasonable suspicion to believe Kinkead's vehicle violated Iowa Code section 321.436.

■ While auditory perception may be more subjective and difficult to standardize than visual perception, the language of the statute and type of offense necessitate the use of the sense of hearing to determine a violation of the statute. Our court has never considered whether a stop based on an officer's auditory perception is legal under the parameters set forth under *Terry*. Several other courts, however, have considered the issue and we find their reasoning persuasive.

In *State v. Beyer,* 441 N.W.2d 919 (N.D. 1989), the North Dakota Supreme Court considered a similar case in which an officer stopped a vehicle based on a statute that required every vehicle to be equipped with a muffler to prevent "excessive or unusual noise." *Beyer,* 441 N.W.2d at 920. The defendant alleged the statute was unconstitutionally vague. In upholding the statute and the stop made by the officer under the statute, the court noted: "To adjudge excessive or unusual noise, officers must rely on their sense of hearing just as they must rely on their sense of sight for speeding violations or their sense of smell for DUI violations." *Id.* at 922. The court found that the officer had reasonable suspicion to stop the vehicle, based on his perception that the defendant's vehicle was "quite loud" and "louder than the other vehicles or normal vehicles that are driving around." *Id.*

Similarly, in *State v. Cobbs,* a Florida court held that the stop of a motorcycle based on a statute which required a muffler on all vehicles to prevent "excessive or unusual noise" was proper. *State v. Cobbs,* 411 So.2d 212, 213 (Fla.Dist.Ct.App.1982). In its analysis of the requirements of the reasonable suspicion standard, the court stated the following:

> A police officer's hearing may deceive him, but so may his sense of sight, smell, taste and touch. . . . [T]he law does not require that every police officer have with him a narcotics sniffing dog, a panoramic breathylizer, a radar gun, or a decibel counter to verify what he smells or sees or hears.

*Id.*

The Wisconsin Court of Appeals also considered a similar issue in *State v. Gaulrapp,* 207 Wis.2d 598, 558 N.W.2d 696 (App.1996). Two police officers pulled over Gaulrapp's vehicle on suspicion that the muffler on his vehicle was excessively loud. The officers based their suspicion on the fact that they were able to hear the muffler even though the windows on their car were up and the police radio was on. *Gaulrapp,* 558 N.W.2d at 697–98. The court found that "there was a legally permissible justification to stop Gaulrapp based on the loud muffler." *Id.* at 700.

■ We find that the facts articulated by Trooper Miller support the stop of Kinkead's vehicle. We do not require proof of criminality by a preponderance of the evidence to validate an investigatory stop, only a reasonable suspicion that criminal activity is occurring. *Richardson,* 501 N.W.2d at 496–97. The facts articulated by Miller support a reasonable suspicion that Kinkead's vehicle violated the statute. Requiring a more specific finding by law enforcement officials before a stop could be made would unduly hinder the enforcement of our laws. If officers were not allowed to rely on their sensory perception in performing their jobs, their positions as enforcers of our state's laws would be rendered futile.

■ Kinkead next argues that because he submitted evidence showing that the vehicle's muffler was in good working condition, the stop should be invalidated. We have considered this issue before and held that a mistaken basis for a stop does not necessarily render the stop invalid, but is merely a factor to consider in the reasonable suspicion analysis. *See State v. Melohn,* 516 N.W.2d 24, 25 (Iowa 1994) (stop of vehicle speeding away from vicinity of gunshots upheld as reasonable under the circumstances even though facts later showed the individual was not involved in the gunfire); *State v. Jackson,* 315 N.W.2d 766, 767 (Iowa 1982) (stop of vehicle for failure to display license plates and subsequent request for driver's license held valid even though officer later learned the vehicle was displaying paper plates issued by the department of transportation); *State v. Ewoldt,* 448 N.W.2d 676, 678 (Iowa App.1989) ("Information sufficient to establish reasonable cause to stop is not defeated by an after-the-fact showing that the information was false."); *see also* 4 Wayne R. LaFave, *Search and Seizure* § 9.4(b), at 147–48 (3d ed.1996) (noting that the principal function of an investigatory stop is to resolve the ambiguity as to whether criminal activity is afoot and, therefore, that the "possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion") (quoting *In re Tony C.,* 21 Cal.3d 888, 148 Cal.Rptr. 366, 369, 582 P.2d 957, 960 (1978)). Thus, the fact that the muffler on Kinkead's vehicle was later determined to be operating properly does not invalidate the otherwise lawful stop.

Kinkead relies on a statement in *State v. Malloy,* 453 N.W.2d 243 (Iowa App.1990), to support his argument that the stop should be invalidated based on Trooper Miller's mistaken belief that the muffler was functioning improperly. His reliance on *Malloy* for that proposition is improper. In *Malloy,* officers stopped a vehicle after the driver made a right-hand turn from the middle lane of a five-lane, one-way street without using a turn signal. *Malloy,* 453 N.W.2d at 244. The court of appeals found that the stop could not be supported on the proffered ground that the driver failed to use his turn signal. Under Iowa Code section 321.314, drivers are only required to use turn signals when another vehicle may be affected by the turn. The officers were over one block behind the defendant's vehicle when the turn was made and no other cars were in the vicinity. Thus, the court found the use of a turn signal to be unnecessary. *Id.* at 245. The court concluded that "[w]hen the facts giving rise to an arrest do not constitute an offense, no reasonable cause exists to stop" a vehicle. *Id.* (citation omitted).

Kinkead relies on this statement to support his argument that the stop of his vehicle was improper. The holding in *Malloy* can be distinguished, however, on the ground that the statute in that case was clearly not applicable at the time of the stop under the circumstances presented. The fact that the defendant failed to use his turn signal did not constitute an offense because the statute did not require use of a signal unless another vehicle would be affected by the turn. Thus, the officers had no reasonable suspicion to believe that a criminal act had occurred under the facts presented. The situation in the case at bar is not the same in this regard. The facts presented to Miller prior to the stop of Kinkead did constitute an offense under Iowa Code section 321.436 and thus reasonable suspicion existed to stop his vehicle.

### IV. Void for Vagueness Claim

Kinkead also argues the stop of his vehicle should be held invalid and the evidence obtained therefrom rendered inadmissible on the ground that the statute on which the stop was based is unconstitutionally vague. The State argues that Kinkead failed to preserve error on his claim that Iowa Code section 321.436 is unconstitutionally vague, alleging that the claim was neither raised by the defendant at the district court level, nor ruled on by the district court. We agree with the State's contention and hold that Kinkead failed to preserve error on the vagueness issue and thus is barred from presenting the issue on appeal.

■ From our de novo review of the record, we find no indication that Kinkead's counsel raised the issue of the constitutionality of Iowa Code section 321.436 at any time during the proceedings. There was no mention of the vagueness issue in Kinkead's motion to suppress, nor was it raised at the suppression hearing. Furthermore, because the trial was based solely on the minutes of testimony prepared by the prosecutor, there is no mention of the vagueness issue in that portion of the record. Kinkead's attempt in his brief for this court to merge the vagueness issue with his argument alleging that Trooper Miller did not have a reasonable, articulable suspicion to make the stop is unavailing. The arguments are separate and distinct bases for suppression of the evidence and both arguments should have been raised at the district court level.

■ Our court has consistently held that "a party who fails to alert the district court to its contentions at trial cannot thereafter rely on those contentions to seek reversal on appeal." *State v. Rosenstiel,* 473 N.W.2d 59, 61 (Iowa 1991) (citations omitted). Allowing a defendant to raise an issue for the first time on appeal would seriously undermine the district court's original jurisdiction. *Id.* The fact that Kinkead's argument is constitutional in nature matters not to our analysis of this issue. Our rule of error preservation applies with equal strength to constitutional issues. *State v. Halliburton,* 539 N.W.2d 339, 343 (Iowa 1995). We find that Kinkead failed to preserve error on his contention that Iowa Code section 321.436 is unconstitutionally vague.

### V. Ineffective Assistance of Counsel Claim

■ Kinkead argues that if we find his trial counsel failed to preserve error on the

constitutionality of Iowa Code section 321.436, then we should find that he was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. To prove a claim of ineffective assistance of counsel, "a defendant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom." *State v. Baker*, 560 N.W.2d 10, 15 (Iowa 1997) (citing *State v. Shumpert*, 554 N.W.2d 250, 254 (Iowa 1996)). Generally, claims of ineffective assistance of counsel are not resolved on direct appeal. Rather, via postconviction proceedings an adequate record of the claim can be developed and the attorney charged with providing ineffective assistance may have an opportunity to respond to the defendant's claim. *Id.* (citing *State v. Constable*, 505 N.W.2d 473, 479 (Iowa 1993)). We find that the existing record is inadequate to properly address the merit of Kinkead's claim.

VI. Conclusion

Having considered all issues presented in Kinkead's appeal, we conclude that his convictions should be affirmed.

**AFFIRMED.**