# IN THE COURT OF APPEALS OF IOWA

No. 14-2108
Filed January 13, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOE MICHAEL RIPPERGER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Warren County, Kevin A. Parker (suppression hearing) and Mark F. Schlenker (trial and sentencing), District Associate Judges.

The defendant appeals from the district court's denial of his motion to suppress. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

Nicholas A. Carda and Ryan J. Ellis of Ellis Law Offices, P.C., Indianola, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Joe Ripperger appeals from the district court's denial of his motion to suppress evidence obtained following the stop of his vehicle. Ripperger maintains the officer did not have probable cause or reasonable suspicion to justify the stop. Because we find the State did not meet its burden to show the officer had either probable cause or reasonable suspicion to initiate a stop of Ripperger, we reverse the ruling of the district court and suppress all evidence obtained following the illegal stop. We remand for further proceedings consistent with this decision.

**I. Background Facts and Proceedings.**

On February 10, 2014, Ripperger was charged by trial information with operating a motor vehicle while under the influence of alcohol, in violation of Iowa Code section 321J.2 (2013).

Ripperger filed a motion to suppress, and a hearing was held on the matter on April 23, 2014. At the hearing, Officer Jim Van Gundy testified that he was driving eastbound on an unmarked gravel road at approximately 2:26 a.m. when he noticed Ripperger's vehicle. Ripperger was driving westbound on the same gravel road, and "as the vehicle approached [the officer's car], it swerved into [his] lane and swerved back." Officer Van Gundy testified, "There was a person, a vehicle, driving in my lane. I was afraid he was going to hit me head-on. I actually slowed down and pulled to the right, and then pulled back over into the lane." Based on that observation, Officer Van Gundy turned his patrol car lights on and stopped Ripperger's vehicle. In making the stop, the officer pulled into Ripperger's lane of traffic and stopped directly in front of Ripperger's truck,

so the patrol car and truck were ultimately facing each other. After making contact with Ripperger, Officer Van Gundy asked him to complete only one of the field sobriety tests—the horizontal gaze nystagmus—because of a high wind warning with wind speeds from "30 to 40 miles an hour and gusting up to 65 miles per hour." Officer Van Gundy testified he did not believe it was "fair" to ask Ripperger to complete the balance test or walking test because "[t]he winds were quite strong. They would certainly blow someone around." Additionally, after arresting Ripperger, Officer Van Gundy told him, "That wind is so strong it was blowing my car around."

The district court denied Ripperger's motion to suppress on May 7, 2014. In its ruling, the court stated, "Van Gundy had cause to stop Ripperger's truck based upon the actions of the Defendant while driving his truck."

A bench trial on the minutes of testimony was held on December 11, 2014. Ripperger was found guilty of operating a motor vehicle while under the influence of alcohol and was sentenced to a term of incarceration not to exceed one year with all but two days suspended. He appeals.

## II. Standard of Review.

Because this controversy arises from an alleged violation of a constitutional right, we review the district court's denial of the motion to suppress de novo. *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004). We make "an independent evaluation of the totality of the circumstances as shown by the entire record." *Id.* We give deference to the trial court's findings regarding the credibility of the witnesses, but we are not bound by them. *Id.*

**III. Discussion.**

The Fourth Amendment of the Federal Constitution and article 1, section 8 of the Iowa Constitution protect persons from unreasonable searches and seizures. *State v. Reindeers*, 690 N.W.2d 78, 81 (Iowa 2004).[1] "[S]topping an automobile and detaining its occupants constitute a 'seizure' . . . even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Stopping a vehicle and detaining the occupant is not an *unreasonable* seizure when the officer has either (1) probable cause due to observation of a traffic violation or (2) reasonable suspicion, supported by articulable facts, that a criminal act has occurred or is occurring. *State v. Tague*, 676 N.W.2d 197, 201–04 (Iowa 2004). If we find the officer had either probable cause or reasonable suspicion to initiate the stop, we will affirm the ruling of the district court.

**A. Probable Cause.**

When a peace officer observes a traffic violation, however minor, the officer has probable cause to stop the vehicle. *State v. Tyler*, 830 N.W.2d 288, 293 (Iowa 2013). "Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it." *State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990). "[T]he purpose of a probable cause stop is to seize someone who has already committed a crime." *Tyler*, 830 N.W.2d at 293. The State has the burden to

---

[1] Because Ripperger does not articulate a different standard for analysis under the Iowa Constitution, we apply the federal standard. *See State v. Kern*, 831 N.W.2d 149, 174 (Iowa 2013).

prove by a preponderance of the evidence that the officer had probable cause to stop the vehicle. *State v. Predka*, 555 N.W.2d 202, 206 (Iowa 1996).

At the suppression hearing, the State argued the officer had probable cause to initiate a traffic stop of Ripperger because he witnessed Ripperger violate Iowa Code section 321.297. Section 321.297 provides, in relevant part:

> 1. A vehicle shall be driven upon the right half of the roadway upon all roadways of sufficient width, except as follows:
>> a. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement.
>> b. When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided, any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute an immediate hazard.

Officer Van Gundy testified that Ripperger's vehicle crossed the center of the road one time and that he did so by swerving into his lane. We note that the stop occurred on a gravel road and there were no lines or demarcations to establish the center of the road. When asked to describe the motion more specifically, Officer Van Gundy stated, "It was like a drift over and a drift back" and estimated that the motion took "a few seconds." Officer Van Gundy stated he "slowed down and pulled to the right" because he was afraid Ripperger "was going to hit [him] head-on." However, the video from the officer's patrol car does not corroborate his testimony. The officer neither reduced his speed nor pulled his vehicle to the right before turning on the lights in his patrol car. The video does not allow us to detect any time that Ripperger's vehicle crossed the center of the roadway in violation of Iowa Code section 321.297, although we acknowledge the quality of the video may impact our abilities. We also find it difficult to understand the

officer's avowed fear of being hit head-on as he subsequently pulled his car to a stop right in front of Ripperger and in Ripperger's lane of traffic.[2]  Neither the video nor the officer's testimony provides sufficient weight to support a violation of Iowa Code section 321.297.

The State has not met its burden of establishing that the officer had probable cause to stop Ripperger.

**B. Reasonable Suspicion.**

Ripperger challenges the constitutionality of the traffic stop, asserting the officer did not have reasonable suspicion to justify the warrantless stop. Stopping a vehicle and detaining the occupant is not an unconstitutional seizure when the officer has an "articulable and reasonable suspicion" the occupant is involved in criminal activity.  *See Prouse*, 440 U.S. at 663.  "Mere suspicion, curiosity, or hunch of criminal activity is not enough." *Tague*, 676 N.W.2d at 204. "[I]f reasonable suspicion exists, but a stop cannot further the purpose behind allowing the stop, the investigative goal as it were, it cannot be a valid stop." *Tyler*, 830 N.W.2d at 298.

Here, the time of the stop—2:26 a.m.—is a fact that weighs in the favor of a finding of reasonable suspicion.  *See State v. Kreps*, 650 N.W.2d 636, 646 (Iowa 2002) (citing *United State v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) ("The lateness of the hour is another fact that may raise the level of suspicion.")). However, the time of night alone is not sufficient to give rise to reasonable suspicion.  As we stated above, the video from the officer's car does not depict

---

[2] On cross-examination, the officer testified that it is not standard to stop a vehicle by pulling in front of it.

Ripperger swerving into the officer's lane. The State has not met its burden of establishing that the officer had reasonable suspicion to stop Ripperger.

**IV. Conclusion.**

We find the State did not meet its burden to show the officer had probable cause or reasonable suspicion necessary to properly initiate a traffic stop of Ripperger's vehicle. Without the requisite suspicion, the traffic stop was a violation of Ripperger's constitutional rights. As such, we reverse the ruling of the district court and suppress all evidence obtained following the illegal stop. *See State v. Kinkead,* 570 N.W.2d 97, 100 (Iowa 1997) ("If the State fails to carry its burden, the evidence obtained through the investigatory stop must be suppressed."). We remand for further proceedings consistent with this decision.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**