# IN THE COURT OF APPEALS OF IOWA

No. 19-0537
Filed March 4, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**GRASON TREVER LANSMAN,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Story County, Steven P. Van Marel, District Associate Judge.

A defendant appeals his conviction for driving while barred. **AFFIRMED.**

Robert R. Anderson, Huxley, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

Grason Lansman appeals his conviction for driving while barred. He contends the district court erred in denying his motion to suppress evidence gathered during a traffic stop he alleges violated both his federal and state constitutional rights against unlawful seizure. Lansman argues the stopping officer wrongly believed his older model vehicle violated a rear lighting statute. Because the officer made a mistake of fact—and not a mistake of law—we second the district court's denial of the motion to suppress and affirm Lansman's conviction.

## I.     Facts and Prior Proceedings

On early morning patrol in December 2018, Nevada Police Officer Josephine Bailey saw Lansman driving his GMC Jimmy. Officer Bailey later testified she pulled him over because she saw no illumination coming from his center brake light when he slowed the vehicle. *See* Iowa Code § 321.387 (2018) (requiring rear lighting equipment originally manufactured on a vehicle to be in working condition). After stopping Lansman, Officer Bailey discovered he was driving with a barred license and arrested him for that offense.

Lansman moved to suppress evidence discovered during the traffic stop. He argued the officer did not have probable cause for the seizure because his 1992 version of the GMC Jimmy was not manufactured with a center brake light. So he was not in violation of section 321.387.

At the suppression hearing, Officer Bailey testified under the lighting conditions she couldn't tell whether a center brake light was installed on Lansman's vehicle, and she could not identify the make and model, except for the fact it was

"[j]ust an older model . . . SUV type of vehicle." She further testified she understood the federal regulations governing the mandatory installation of a center brake light did not apply to trucks manufactured before 1994.[1] At the suppression hearing, the State stipulated Lansman's 1992 GMC Jimmy was not manufactured with a center high mounted stop lamp.

The district court denied the motion to suppress, finding the officer reasonably believed Lansman's vehicle was in violation of section 321.387. The court noted the officer's confusion related to the year of Lansman's vehicle (suspecting the Jimmy was manufactured after 1994), which was a mistake of fact, not of law. The judge predicted if the officer had checked the year and model of the Jimmy by running the license plates before stopping the vehicle, she would have discovered Lansman was driving with a barred license and pulled him over for that violation regardless.

At a bench trial, the court found Lansman guilty of driving with a barred license. Lansman appeals and asks us to reverse the suppression ruling.

## II. Scope of Review

We review suppression rulings addressing constitutional issues de novo. *State v. Ingram*, 914 N.W.2d 794, 798 (Iowa 2018). We defer to the district court's factual findings, but they do not dictate our result. *State v. Louwrens*, 792 N.W.2d 649, 651 (Iowa 2010).

---

[1] Since 1986 (for cars) and 1994 (for other vehicles), the National Highway Traffic Safety Administration has required new vehicles to have center high mounted stop lamps. 49 C.F.R. § 571.108.

### III.    Analysis

Lansman claims the traffic stop violated both the federal and state constitutions.  *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8.  Because Lansman has properly raised a claim under article I, section 8 and urges us to apply state constitutional protections, we will analyze his suppression challenge under the Iowa Constitution.[2]

We start our analysis from the basic proposition a peace officer may stop a motorist to investigate even a minor traffic violation.  *See State v. Tyler*, 830 N.W.2d 288, 293 (Iowa 2013) (*citing State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)).  If the officer makes an objectively reasonable mistake about the facts underlying that violation, Iowa courts may uphold the stop.  *See State v. Lloyd*, 701 N.W.2d 678, 681 (Iowa 2005).  By contrast, a mistake of law cannot save a stop under Iowa law.  *Tyler*, 830 N.W.2d at 294.  As the State notes, sometimes it is difficult to tell if the mistake is one of fact or law.  *See Louwrens*, 792 N.W.2d at 654.  But in most cases, "the officer's frank testimony as to what he or she thought the law was and what facts led him or her to believe the law was being violated" will help distinguish the kind of mistake at issue.  *Id.*

Lansman insists Officer Bailey's belief that he violated section 321.387 was a mistake of law.  In his framing: "Officer Bailey was not mistaken as to whether there was or was not a center brake light out: Her mistake was that Lansman's

---

[2] Although article I, section 8 and the Fourth Amendment have similar wording, their analyses can take on different dimensions.  For instance, "the mistake-of-law doctrine is broader under the United States Constitution than it is under the Iowa Constitution."  *State v. Scheffert*, 910 N.W.2d 577, 585 n.2 (Iowa 2018).  The United States Supreme Court decided a reasonable mistake of law could support a traffic stop.  *Heien v. North Carolina*, 574 U.S. 54, 67 (2014).

GMC Jimmy was not required to have one, as far as the Iowa legislature is concerned." The State argues the opposite. It cites the officer's testimony showing she had a command of the law, including the federal regulations governing the equipment originally manufactured on motor vehicles of a certain model year. It argues her mistake was one of fact, believing Lansman's vehicle was newer than it was. She testified GMC Jimmys manufactured between 1990 and 1994 look "very similar," so it was hard for her to tell them apart. From that frank testimony, the State construes her mistake as to the year and model of Lansman's vehicle to be one of fact, not of law. We find the State's argument to be more persuasive.

Prior cases help illuminate where Officer Bailey's gaffe falls on the mistake-of-law vs. mistake-of-fact divide. *State v. Lloyd* offers a close analogy because the officer there also mistakenly pulled over a vehicle based on the inability to see important details in the early morning hours. 701 N.W.2d 678, 679 (Iowa 2005). The officer stopped Lloyd because he did not see permanent license plates on the car. *Id.* At a suppression hearing, Lloyd showed he had a temporary plate taped to his car's rear window at the time of the traffic stop. *Id.* In *Lloyd*, our supreme court accepted the State's position that the officer's reasonable mistake of fact did not defeat the probable cause for the stop. *Id.* at 683 (concluding "[h]ad the facts been as [the officer] believed them to be, he undoubtedly would have had probable cause to stop Lloyd's car").

Similarly, Officer Bailey testified that when she decided to make the stop, it was 1:25 a.m. and dark, so it was difficult to discern "any important features on the back" of Lansman's vehicle. Had the facts been as she believed, and Lansman had been driving a GMC Jimmy manufactured after 1994, she would have had

probable cause to stop him for a rear lamp violation under section 321.387. Like the determination in *Lloyd*, we believe Officer Bailey's mistake of fact was objectively reasonable.

We also find support for our holding in *State v. Kinkead*, 570 N.W.2d 97, 99 (Iowa 1997). There, a state trooper stopped Kinkead for what she believed to be a violation of Iowa Code section 321.436, which prohibits excessive muffler noise. Later testing of the muffler found it to be in good working condition. The *Kinkead* court refused to invalidate the stop based on the officer's mistaken sensory perception. *Id.* at 101. We find Officer Bailey's misperception that Landsman was driving a newer vehicle to fall into the same category as *Kinkead*.

On the other side of the divide, Lansman relies on *Louwrens*, 792 N.W.2d at 650, and *Tyler*, 830 N.W.2d at 294—cases where the supreme court invalidated stops based on a mistakes of law. We find both of those cases distinguishable from Lansman's situation.

In *Louwrens*, Estherville police officers stopped a motorist for what they believed to be an illegal U-turn. 792 N.W.2d at 650. The officers knew the city had a local ordinance prohibiting U-turns on that street. *Id.* But they did not understand Iowa Code section 321.237 dictated such turning restrictions were not effective without posted signs. *Id.* Because the city had posted no signs where the officers stopped Louwrens, she challenged the seizure. *Id.* The court held the officers' misunderstanding about enforcement of the city ordinance was a mistake of law. *Id.* at 654.

In *Tyler*, a Johnston police officer stopped a car based on his mistaken belief that its tinted license plate covers violated Iowa Code section 321.37. 830

N.W.2d at 294. A proper reading of that statute would have revealed to the officer that it proscribed only placement of any frame or cover "which does not permit full view of all numerals and letters printed on the registration plate." *Id.* The officer's misapprehension of the statute's reach constituted a mistake of law. *Id.*

Unlike the Estherville officers in *Louwrens* and Johnston officer in *Tyler*, Officer Bailey understood the state law (as well as the federal regulations it incorporated). If Officer Bailey had thought all vehicles on the road regardless of manufacturing year were required to have a center brake light, then she would have based her stop on a mistake of law. Instead, she mistook Lansman's vehicle as modern enough to be required to have a functioning center brake light—a mistake of fact. That mistake of fact was objectively reasonable given the dark conditions and the similarity in the appearance of the vehicle models. We thus uphold the suppression ruling and affirm Lansman's conviction.

**AFFIRMED.**